# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SHANNON K KANE, | Case No.: 2:20-cv-01037-JAD-VCF |
| Plaintiff | |
| v. | **Order Screening Complaint and Resolving Pending Motions** |
| CORE CIVIC, et al., | [ECF Nos. 4, 5, 6, 9, 11, 13] |
| Defendants | |

Plaintiff Shannon K Kane, who is currently in the custody of the Nevada Southern Detention Center ("NSDC") brings this civil-rights action, claiming that his due-process right is being violated because he has not been transferred to a residential reentry center and that his Eighth Amendment rights have been violated by the facility's COVID-19 action or inaction. I find that Kane qualifies for *in forma pauperis*, so I screen his complaint under 28 U.S.C. § 1915A. Although Kane's complaint states that this is a 42 U.S.C. § 1983 action, it is clear from the complaint that Kane is a federal inmate. A § 1983 action can target only actions by state actors, and Kane does not allege any facts that could indicate that any of the defendants were acting under color of *state* law. So, I liberally construe Kane's action as one under § 1983's federal corollary—the case known as *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*.[1] Upon doing so, I find that he has failed to state a colorable *Bivens* due-process claim and cannot state one, so I dismiss Kane's *Bivens* claims with prejudice. But I give Kane leave to file an amended complaint by August 20, 2020, alleging a non-*Bivens* Eighth Amendment claim for injunctive relief that is based on 28 U.S.C. § 1331 and the court's inherent

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

equitable powers.  And because the relief Kane seeks in his remaining motions is dependent on a viable claim—which Kane does not yet have—I deny all of Kane's remaining motions.

## I.      Application to Proceed *In Forma Pauperis* [ECF No. 6]

Kane has applied to proceed *in forma pauperis*.[2]  Based on the financial information provided, I find that Kane is unable to prepay the full filing fee in this matter, so I grant the application.  This means only that Kane need not pay an initial installment fee, prepay fees or costs or provide security for fees or costs, but he is still required to pay the full $350 filing fee under 28 U.S.C. § 1915, as amended.  That full filing fee will remain due and owing even if this case is dismissed or otherwise unsuccessful.  In order to ensure that plaintiff pays the full filing fee, his institution will be directed to take money from his account monthly until the fee is fully paid.

## II.     Procedural background

Michael A. Bacon, who is a prisoner and not an attorney, filed a complaint with this court and initiated an action on his own behalf.[3]  That complaint was not signed by Kane.  Bacon then filed a "motion for judicial notice," seeking to add Kane as a plaintiff.[4]  I informed Kane that a person who is not represented by counsel is required to sign a complaint and that, because Kane had not filed a signed complaint, Kane was not a party to Bacon's action.[5]  I did not screen a complaint for Kane because Kane had not filed a complaint, and I screened only Bacon's complaint.[6]  I informed Kane that, if he wanted to bring claims in this court, he must file a signed

---

[2] ECF No. 6.

[3] 2:20-cv-00914-JAD-VCF, ECF No. 1-1.

[4] 2:20-cv-00914-JAD-VCF, ECF No. 4.

[5] ECF No. 1 at 2.

[6] *Id.* at 5.

complaint within 30 days in a separate case.[7]  I did not instruct Kane to file an *amended* complaint because he had not filed a complaint that he could amend.  Nevertheless, and even though Kane had not initiated an action by filing a complaint, he proceeded to file multiple motions, including a motion for appointment of counsel, before filing what he has called a first amended complaint.[8]  This document filed by Kane is not an amended complaint but instead is the original complaint in this case.  It is the operative complaint, and I now proceed to screen that complaint.

**III.   Screening Discussion**

      **A.      Overview of Kane's action**

      Kane sues United States Marshal Jefferson, private entity Core Civic, and Core Civic employees Warden Brian Koehn, Deputy Warden Laurer, and John Does.[9]  Kane seeks damages for due-process and Eighth Amendment violations.  I screen each claim in turn.

      **B.      Screening standard**

      Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[10]  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[11]  All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact.  This

---

[7] *Id.* at 5, 23.

[8] ECF No. 10.  I also deny the motion for an extension of time to file an amended complaint.

[9] ECF No. 10 at 1–2.

[10] *See* 28 U.S.C. § 1915A(a).

[11] *See* 28 U.S.C. § 1915A(b)(1)(2).

includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[12]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[13]  In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[14]  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[15] but a plaintiff must provide more than mere labels and conclusions.[16]  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[17] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[18]

### C.    Analysis of Kane's claims

#### 1.    *Claims against Core Civic*

Kane alleges that Core Civic is contracted to run the private facility NSDC for the Department of Justice and United States Marshal Service.[19]  Because Core Civic is a private

---

[12] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[13] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[14] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[15] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[16] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[18] *Id*.

[19] ECF No. 10 at 1, 2.

entity, it may not be held liable in a *Bivens* action.[20]   I therefore dismiss Kane's *Bivens* claims against Core Civic with prejudice, as amendment would be futile.

### 2.   Count 1–Due-process Violation for failure to release Kane to the RCC

In Count 1, Kane alleges a due-process claim based on his allegation that he remains at NSDC though he should have been released to a Residential Re-entry Center ("RCC").[21]   Kane alleges that he was sentenced in the District of Nevada and was serving that sentence in an RCC.[22]   While at the RCC, he was cited for an infraction and was sent to NSDC, where he saw the Inmate Disciplinary Hearing Officer and was disciplined by being required to spend 41 days at NSDC for the infraction.   Those 41 days have come and gone, and Kane is still there.   On May 7, 2020, Kane sent an e-mail request to Defendant Jefferson asking why he was still at NSDC even though he should have been sent back to the RCC.   Defendant Jefferson responded to Kane's inquiry by saying that Kane was correct that he is designated to RCC, but no answer was given as to why Kane had not been sent back to the RCC given that the 41 days had passed.   On June 19, 2020, Kane spoke to Captain Henderson about still being at NSDC instead of the RCC. Captain Henderson wrote down Kane's name and his Bureau of Prisons number to investigate the issue, but Kane has not heard from Captain Henderson about his inquiry.[23]   Kane concludes that he was not afforded "due process" to be kept at NSDC beyond the 41 days.[24]

---

[20] *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (holding that *Bivens* does not extend to private entities acting under color of federal law).

[21] These facts are taken from the plaintiff's allegations and are not intended as findings of fact.

[22] ECF No. 10 at 2.

[23] *Id.* at 2–3.

[24] *Id.* at 3.

Although Kane concludes that he was denied "due process," he labels this claim as a Fourteenth Amendment claim for "equal protections under the law."[25]  I find no basis in Kane's allegations for invoking a right to equal protection.  I therefore construe this claim as a due-process claim.  Because Kane is a federal prisoner, his due-process claim falls under the Fifth Amendment's Due Process Clause.[26]

Kane also appears to be asserting this due-process claim against Defendant Jefferson, as he is the only defendant mentioned in the allegations in Claim 1.  A defendant is liable in a *Bivens* action only upon a showing of personal participation by the defendant; a defendant cannot be held liable merely because his subordinates violated the constitution.[27]

Two statutory provisions govern the Bureau of Prison's (BOP's) authority to place inmates in its custody in RRCs: 18 U.S.C. §§ 3621(b) and 3624(c). Section 3621 governs the authority of the BOP to designate a prisoner's placement in general.  Section 3624(c) authorizes the BOP to prepare prisoners for reentry to the community during the final months of their terms of imprisonment.[28]  Under this section, prisoners may be placed in an RRC before being released from BOP custody.  Kane does not allege that Jefferson decided not to send him to the RCC as disciplinary punishment for an infraction.  But Kane does allege that his due-process rights have been violated because he is still being housed at NSDC rather than being transferred to the RCC.

---

[25] *Id.* at 2.

[26] *See Castillo v. McFadden,* 399 F.3d 993, 1002 n.5 (9th Cir. 2005).

[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

[28] *See* 18 U.S.C. § 3624(c).

6

In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.[29]  But a prisoner has no liberty interest in a particular classification or in placement at any particular facility even if the degree of confinement in one facility is significantly different from that in another facility.[30]  Nor do inmates have a due-process liberty interest in their eligibility for rehabilitation programs.[31]

In *Bivens*, the United States Supreme Court held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures.  The High Court later expanded *Bivens* damages claims in specific gender-discrimination and inadequate-medical-treatment scenarios involving defendants who were federal employees.[32]  Then in *Ziglar v. Abbasi*, the Court significantly limited the availability of *Bivens* actions, cautioning lower courts not to expand *Bivens* remedies outside those specific three scenarios very specific contexts without special circumstances.[33]

---

[29] *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

[30] *Olim v. Wakinekona,* 461 U.S. 238, 244–45 (1983); *Meachum v. Fano,* 427 U.S. 215, 224–25 (1976); *Moody v. Daggett,* 429 U.S. 78, 88 n. 9 (1976); *see also Stevens v. Thomas*, No. 11-CV-790-MA, 2011 WL 3563131, at *5 (D. Or. Aug. 10, 2011) (concluding that prisoner did not have a liberty interest in RRC placement).

[31] *See Moody,* 429 U.S. at 88 n. 9.

[32] *See Davis v. Passman*, 442 U.S. 228, 248–49 (1979) (permitting a damages remedy for gender discrimination as a claim under the Fifth Amendment Due Process Clause); *Carlson v. Green*, 446 U.S. 14, 19 (1980) (allowing a damages remedy for an Eighth Amendment violation for failure to provide adequate medical treatment); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("A *Bivens* claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

[33] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854–55, 1857–61 (2017) (explaining that a context is new if the case differs in any meaningful way from the three previous *Bivens* cases); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("A *Bivens* claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages

When a *Bivens* action is brought in a context different from the three recognized situations, as is the situation in Kane's case, the availability of alternative remedies will generally preclude the *Bivens* claim.[34]   The alternative remedies and a potential *Bivens* remedy "need not be perfectly congruent."[35]   *Bivens* does not extend to new situations if there is an alternative remedial structure like tort law, injunction actions, or remedial mechanisms established by the BOP for review of a federal prisoner's issues concerning confinement under 28 C.F.R. 542.10.[36] Because here, Kane has alternative remedies available, like the BOP's remedial process under 28

---

remedy was previously recognized."); *Minneci v. Pollard*, 565 U.S. 118, 126 (2012) (recognizing that defendant's status as private employee is a new context).

[34] *Ziglar*, 137 S. Ct. at 1858, 1864–65; *Vega v. United States*, 881 F.3d 1146, 1153–55 (9th Cir. 2018) (declining to extend *Bivens* to Fifth Amendment due-process claim).

[35] *Minneci v. Pollard*, 565 U.S. 118, 129 (2012); *see also Vega*, 881 F.3d at 1155  (recognizing that the alternative remedial structure and the potential *Bivens* remedy need not be identical, and "any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from a new and freestanding remedy in damages").

[36] *See Minneci,* 565 U.S. at 131 (holding that *Bivens* claim may not be brought against employees working at a privately operated federal prison where the allegedly wrongful conduct is of a kind that typically falls within the scope of traditional state tort law); *Malesko*, 534 U.S. at 74 (declining to apply *Bivens* where inmate in privately operated prison had full access to the remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program as set forth in 28 C.F.R. 542.10); *Vega*, 881 F.3d at 1148 (holding that *Bivens* did not apply to Fifth Amendment due process claim because plaintiff had alternative means for relief against private entity's employees through 28 C.F.R. 542.10); *Schwarz v. Meinberg*, 761 F. App'x 732, 734–35 (9th Cir. 2019) (refusing to extend *Bivens* remedy to Fifth Amendment claim regarding  BOP's refusal to place the plaintiff in a camp or to Eighth Amendment unsanitary cell conditions claim because alternative remedies were available); *Jones v. Shinn*, No. CV 15-00486 LEK-KJM, 2020 WL 1529354, at *8–10 (D. Haw. Mar. 30, 2020) (holding that *Bivens* did not extend to claim for unsafe shower conditions because alternative tort remedy was available).

1  CFR § 542.10,[37] injunction actions, and state tort actions, I dismiss his *Bivens* due-process claim

2  with prejudice because amendment would be futile.[38]

### 3.   Count 2—Claims related to COVID-19 management at NSDC

4       In Count 2, Kane seeks damages for the way that the COVID-19 pandemic is being

5  handled at NSDC.[39]

### a.   Kane's COVID-19 factual allegations

7        Kane alleges that, in "March 2020 to present," the Warden, Deputy Warden, Director of

8  Medical, and Mr. Jefferson personally and falsely told Kane that: (1) all NSDC staff are screened

9  for COVID-19; (2) NSDC stopped movement of inmates and detainees among its facilities

10  because of COVID-19 concerns; (3) social distancing would be created by using every other

11  bunk for placement (even though this is not possible in a dorm setting of 96 people); (4) inmates

12  in quarantine units would be served food on Styrofoam trays; (5) NSDC is equipped to provide

13  appropriate care for COVID-19 (even though no place is equipped to provide appropriate care

14  for COVID-19 much less a prison facility that is a dorm setting for 96 people who share 8

15  showers, 8 sinks, and 5 toilets); 6) defendants would implement cleaning and disinfectant

16  procedures; and 7) defendants would reinforce healthy hygiene practices (but there have been

17  times when no soap was available).[40]

18

19

---

20  [37] *See* 28 CFR § 542.10 (2001) (explaining ARP as providing "a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement").

21  [38] I would apply the same reasoning and reach the same conclusion even if I construed this claim
22  as an equal-protection claim.

23  [39] All of the facts recited in this order are taken from the plaintiff's allegations and are not intended as findings of fact.

[40] ECF No. 10 at 3–4.

He further alleges that "NSDC" now says that it will not stop movements of inmates and detainees between facilities because it has a contract. Kane and others repeatedly asked the Warden, Deputy Warden, Jefferson, and "staff" for NSDC to cease movements between facilities, but they continued to move inmates from infected facilities to NSDC, and this caused an outbreak of COVID-19 to occur.[41]

On April 10, 2020, a female staff member came in to do count. Plaintiff and others were raising concerns about COVID-19 and she said that, if they did not stop, she would cough on them and everywhere in the unit, and then she did so.

Kane claims that detainees are not given proper masks. Staff members do not always wear them or sometimes wear them improperly, and the masks are not "CDC compliant."[42]

One of the COVID-19 patients at NSDC did not show symptoms until 17 days after he arrived there, showing that there are asymptomatic detainees at NSDC. Plaintiff and other detainees have asked the Warden, Deputy Warden, head of medical, and Mr. Jefferson for months for detainees to be tested because of concerns over asymptomatic people with COVID-19. Plaintiff said that it is a fact that, if one person in the prison has COVID-19, the odds are that there are asymptomatic people and testing is needed to protect the detainees and contain the virus. Their response was that they do not have the tests and do not need them. On May 27, 2020, Mr. Sapp stated that at least 60% to 70% of NSDC's detainees had asymptomatic COVID-19 but that they would not be tested unless they had 2 or 3 symptoms.

---

[41] *Id.*

[42] *Id.* at 4.

On May 25, 2020, Plaintiff and others put in requests to be tested because of concerns relating to people who are asymptomatic.  Medical responded by saying that only symptomatic people are tested.[43]

The nurses who pass out medications do not always change gloves or wipe down the medical cart when they come out of the quarantine section and go into regular housing.[44]

On May 31, 2020, a riot broke out[45] due to a staff member's use of excessive force.  "OC spray" was used, causing everyone, including those were not rioting, to suffer from shortness of breath and have a hard time breathing.  The detainees were taken to administrative segregation to sort things out.  Detainees from administrative segregation were placed in G-2 even though these new arrivals were supposed to be in quarantine according to the BOP and CDC guidelines. Kane's wellbeing was placed at risk because he was placed in G-2 with a sick person, exposing him to a person who was sick when he came to NSDC and subsequently tested positive for COVID-19.  Mr. Sapp, the G-2 unit manager, and the head of Medical came into G-2 and confirmed that positive test.  They admitted that this person was not quarantined properly.  This person already was sick when he arrived at NSDC, traveling to NSDC with a bus full of people and spending only four days in quarantine before being placed in a dorm of about 96 people. Plaintiff is now in mental and emotional distress.  Kane believes that this could have been

---

[43] *Id.* at 4–5.

[44] *Id.* at 5.

[45] Kane alleges that on June 19, 2020, a race riot broke out between Mexican and black detainees.  OC spray again was used.  Black detainees were removed.  The Deputy Director threatened to put the black and Mexican inmates together after she separated the detainees who caused the problem.  *Id.* at 8.

1  prevented.  Five other detainees from G-2 showed symptoms and were taken out of the unit.

2  Five people from the unit tested positive.  The remaining detainees in G-2 were not tested.[46]

3  　　　　Kane theorizes that detainees could be put in cells instead of a dorm setting of 96 people

4  sharing showers, sinks, and toilets but "they" have refused that suggestion.  There also are not

5  enough negative-pressure cells to provide COVID-19 care if the number of infected detainees

6  continues to rise.  NSDC cannot contain the virus or "satisfy COVID-19 care."  Another section

7  was quarantined after another person tested positive for COVID-19.[47]

8  　　　　Kane and another detainee started feeling sick on June 12, 2020, but they were told that

9  this was not a great concern because they did not have temperatures of 101 degrees or more.[48]

10  　　　　On June 19, 2020, the Deputy Warden, Head of Medical, and a Captain came into section

11  G-2.  They stated that NSDC did not have to quarantine new arrivals for 14 days.  The Deputy

12  Warden said that they would not stop moving people into NSDC because they have a contract to

13  do so.  When half the people present, including Kane, said that they had been feeling sick, the

14  Deputy Warden and the Medical Director said that they would not test people and provide

15  medical treatment unless the detainees had temperatures, even if the detainees had multiple other

16  symptoms.  They made that decision even though many of the detainees reminded them that the

17  NSDC postings said that there are symptoms other than fevers that can indicate COVID-19.[49]

18

19

20

21
_____

22  [46] *Id.* at 5–8.
[47] *Id.* at 6–7.

23  [48] *Id.* at 7.
[49] *Id.* at 7–8.

On June 24 2020, the Captain came into G-2 due to an incident and said that the reason the detainees there had not been tested was because, if the tests came back positive, the NSDC does not want to be liable.[50]

On June 28, 2020, two staff members in G-2 said that they had been sick for days but still were required to work or they would be written up. One of these staff members said that he had a couple of symptoms for COVID-19 but was having difficulty getting a test.[51]

### b.      *Eighth Amendment analysis*

Based on these allegations, Kane concludes that his Eighth Amendment rights have been violated.[52] Kane appears to be alleging claims for deliberate indifference to both his serious medical needs and safety. The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'"[53] A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the safety or serious medical needs of an inmate.[54] "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."[55]

---

[50] *Id*. at 9.

[51] *Id.*

[52] *Id.* at 3.

[53] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

[54] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

[55] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

*i.      Eighth Amendment medical-needs claim*

To establish the first prong of a medical-needs claim under the Eighth Amendment, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."[56]  To prove deliberate indifference, a plaintiff must prove that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[57]  Thus, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."[58]  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.[59]  When a prisoner alleges deliberate indifference based on a delay in medical treatment, he must show that the delay led to further harm.[60]  Prison officials who know of a substantial risk to an inmate's health and safety are liable only if they responded unreasonably to the risk, even if the harm ultimately was not averted.[61]

---

[56] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

[57] *Farmer*, 511 U.S. at 837; *see also Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc).

[58] *Estelle*, 429 U.S. at 106.

[59] *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

[60] *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

[61] *Farmer*, 511 U.S. at 844.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ii.     *Eighth Amendment safety claim*

In addition to circumstances involving current medical conditions, the Eighth Amendment protects against unsafe conditions of confinement that pose a threat to future health and safety.[62]  In the context of a current risk of *future* harm, the plaintiff must allege facts sufficient to show an objectively intolerable risk of harm.[63]  To demonstrate the subjective element of a claim for deliberate indifference to a serious threat to the inmate's safety, the prisoner must allege facts sufficient to show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."[64]  Thus, mere negligence is insufficient to show a violation of a plaintiff's Eighth Amendment rights.[65]  If a court finds that the Eighth Amendment's subjective and objective requirements are satisfied regarding a current and ongoing significant risk of serious harm to future health, it may grant appropriate injunctive relief.[66]

c.     **Kane has not pled facts to support an Eighth Amendment claim.**

Kane appears to be alleging that Defendant Laurer, who is an employee of a private prison, was deliberately indifferent to his serious medical needs by refusing to provide treatment when he was sick.  Kane also appears to allege that Defendants Koehn, Laurer, and Jefferson have been deliberately indifferent to unsafe prison conditions.  I find that these allegations fail to state a cognizable claim for damages by a federal prisoner.  All of these claims are different from

---

[62] *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

[63] *Farmer*, 511 U.S. at 846.

[64] *Id.* at 837.

[65] *Id.* at 835–36.

[66] *Id.* at 846.

15

the three previous contexts in which the Supreme Court has recognized that a *Bivens* damages

action may be brought, and as I explained above, expansion of *Bivens* claims to new contexts is

very limited.  Regardless, *Bivens* claim may not be brought against employees of a privately

operated federal prison where the allegedly wrongful conduct is the type of conduct that can be

remedied by traditional state tort law, and all of Kane's medical-care allegations can.[67]  Kane's

claim against Laurer for deliberate indifference to serious medical needs therefore is not

cognizable.  In addition, if tort or injunction actions provide an alternative remedy, courts

repeatedly have refused to extend *Bivens* to Eighth Amendment conditions-of-confinement

claims.[68]  Kane's access to the Administrative Remedy Program also may provide an alternative

remedy precluding extension of *Bivens* in this context.[69]  So, *Bivens* cannot be extended to

Kane's damages claims for deliberate indifference to unsafe conditions either.  I therefore

dismiss these Eighth Amendment damages claims with prejudice, as amendment would be futile.

### 4. *Bivens* claims against Doe Defendants

Kane states in the complaint that there are defendants who are "John Does," and it

appears that these people are staff members employed by Core Civic whose names are not

known to Kane at this time.[70]  As a general rule, the use of "Doe" pleading to identify a

defendant is not favored.[71]  However, courts recognize that there are situations "where the

---

[67] *See Minneci v. Pollard*, 565 U.S. 118, 131 (2012).

[68] *See supra* note 36.

[69] *See Malesko*, 534 U.S. at 74 (declining to apply *Bivens* where inmate in privately operated prison had full access to the remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program as set forth in 28 C.F.R. 542.10); *Vega,* 881 F.3d at 1152–55.

[70] ECF No. 10 at 2.

[71] *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

identity of alleged defendants will not be known prior to the filing of a complaint."[72]  Therefore,
if a plaintiff adequately describes the Doe defendant so that the identity of that person can easily
be identified through discovery <u>and</u> if the plaintiff alleges specific acts by that particular Doe
defendant that states a colorable claim against that Doe defendant, then a court later will permit
the plaintiff to engage in discovery to attempt to learn his or her name.[73]  Here, Kane has not
described who any of these John Does are, but it appears that they are staff members referred to
in the complaint.  For the reasons discussed in my analysis of Count 1 and Count 2, I find that
Kane has not stated colorable *Bivens* claims against any of these people.  So, I dismiss any
claims against these unknown staff members with prejudice, as amendment would be futile.

## IV.    Leave to amend

Because I've dismissed Kane's *Bivens* damages claims with prejudice, he may not file an
amended complaint that includes those claims.  However, out of an abundance of caution, I am
giving Kane leave to amend his complaint to include a non-*Bivens* Eighth Amendment
conditions-of-confinement claim for injunctive relief.  It may very well be that Kane does not
wish to pursue such a claim and desired only to seek damages.  My order that informed Kane of
the requirement that he file his own complaint also screened Bacon's complaint and informed
Bacon of the availability of such a claim and the relevant law regarding such a claim.[74]  Kane
nevertheless did not pursue such a claim when he filed his own complaint.  However, in that
order, I was not screening a complaint filed by Kane, and it is possible that Kane did not read

---

[72] *Id.*

[73] *Id.* at 642–43.

[74] ECF No. 1 at 13–14, 21.

that part of the order and did not make a conscious decision not to pursue such a claim.  So, I will give Kane an opportunity to amend his complaint to allege such a claim.

Therefore, I inform Kane that, in some circumstances, plaintiffs may file non-*Bivens* actions for injunctive relief to stop Eighth Amendment violations based on conditions of confinement.[75]  Injunctive relief to put an end to an Eighth Amendment violation may be available where a plaintiff states a colorable Eighth Amendment claim, invokes jurisdiction under 28 U.S.C. § 1331, and asks the court to exercise its traditional powers of equity in a constitutional suit seeking injunctive relief against federal officers in their official capacity.[76]  If Kane wishes to pursue such a cause of action, he must allege facts sufficient to state a colorable *ongoing* Eighth Amendment claim,[77] sue and identify the person who would be responsible for carrying out any order for injunctive relief, and request particular injunctive relief that is

---

[75] *Hodges v. Matevousian*, No. 118CV00790AWIEPGPC, 2020 WL 1139427, at *1 (E.D. Cal. Mar. 9, 2020).

[76] *Id.*; *see also Malesko*, 534 U.S. at 74 ("injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally").

[77] The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the health and safety of inmates.  *Farmer*, 511 U.S. at 832.  To challenge the conditions of confinement under the Eighth Amendment, a plaintiff must meet both an objective and subjective test.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  The objective prong requires a plaintiff to allege facts sufficient to show a condition that is sufficiently serious to form the basis for an Eighth Amendment violation.  *Id.*  In the context of a current risk of *future* harm, the plaintiff must allege facts sufficient to show an objectively intolerable risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994).  To demonstrate the subjective element of deliberate indifference to a serious threat to the inmate's safety, the prisoner must allege facts sufficient to show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."  *Farmer*, 511 U.S. at 837.  Thus, mere negligence is insufficient to show a violation of a plaintiff's Eighth Amendment rights.  *Id.* at 835–36.  If a court finds that the Eighth Amendment's subjective and objective requirements are satisfied regarding a current and ongoing significant risk of serious harm to future health, it may grant appropriate injunctive relief.  *Farmer*, 511 U.S. at 846.

1   specifically and narrowly targeted to resolving the ongoing Eighth Amendment violation.

2   Damages would <u>not</u> be available as relief for such a cause of action.

3          Kane is instructed to carefully read this <u>entire</u> order before deciding whether and how to

4   amend his complaint.  If Kane chooses to file an amended complaint, he is advised that an

5   amended complaint replaces the original complaint, so the amended complaint must be complete

6   in itself.[78]  If Kane chooses to file an amended complaint, he should review the Eighth

7   Amendment law outlined above and allege facts sufficient to show what each defendant is doing

8   to violate his Eighth Amendment rights.  In accordance with Rule 8 of the Federal Rules of Civil

9   Procedure, a plaintiff may not allege facts that are extraneous and not part of the factual basis for

10  the particular constitutional claims he includes in the complaint.[79] So, Kane should not include

11  extraneous facts that are unrelated to the alleged ongoing Eighth Amendment violation.

12         **Kane must file any amended complaint by August 20, 2020.**  If Kane amends the

13  complaint to brings a claim for injunctive relief that is based on 28 U.S.C. § 1331 and the court's

14  inherent equitable powers, rather than based on *Bivens*, he must make that clear in the complaint.

15  If Kane seeks <u>preliminary </u>injunctive relief, he must file a separate motion for preliminary

16  injunctive relief in addition to a complaint stating a claim for injunctive relief and that motion

17  must specify the requested preliminary injunctive relief that is tailored to the Eighth Amendment

18  complaint alleged in the amended complaint.

19

20  ---

[78] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir.
21  1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an
    amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896,
22  928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required
    to reallege such claims in a subsequent amended complaint to preserve them for appeal).

23  [79] *See Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013) (recognizing that Rule 8 can be
    violated when the plaintiff says too much).

19

**V.      Motion for appointment of counsel [ECF Nos. 5, 9]**

Like many prisoners who file civil-rights claims, Kane asks the court to find and appoint him a free lawyer—he asked for one even before he filed a complaint in this case.[80]  A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil-rights claims.[81]  The statute that governs this type of litigation, 28 U.S.C. § 1915(e)(1), provides that "[t]he court may request an attorney to represent any person unable to afford counsel." However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances."[82]  "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved."[83]  "Neither of these considerations is dispositive and instead must be viewed together."[84]

In this case, I do not find exceptional circumstances that warrant the appointment of counsel.  It is rare for this court to appoint counsel and even more rare to appoint counsel before screening and service of a complaint.  Kane filed this motion before he had filed a complaint, so he clearly had not established any likelihood of success at all.  Although Kane subsequently filed a complaint, he chose to include only *Bivens* claims that I am dismissing with prejudice. Therefore, I deny without prejudice the motion for appointment of counsel.  I also deny as moot the motion for a decision on the motion for appointment of counsel,[85] and I caution Kane that he

---

[80] ECF No. 5.

[81] *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981).

[82] *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action).

[83] *Id.*

[84] *Id.*

[85] ECF No. 9.

1  need not file motions seeking court action on pending requests.  Doing so only clogs the docket

2  and creates needless additional work for this court, which delays rulings.

3  **VI.      Motions for Judicial Notice [ECF Nos. 11, 13]**

4          Kane has also filed two motions "for judicial notice."  This term does not mean what

5  Kane thinks it means.  "Judicial notice" is a legal term of art, and it does not mean that a litigant

6  just wants to tell the court something.  Federal Rule of Evidence 201 permits the court to take

7  judicial notice of an adjudicative fact that is "not subject to reasonable dispute" because it is

8  either "generally known within the trial court's territorial jurisdiction" or "can be accurately and

9  readily determined from sources whose accuracy cannot reasonably be questioned."[86]  For

10  example, a party could ask the court to take judicial notice that Christmas Day in 2019 fell on a

11  Wednesday.

12          Kane has offered nothing that this court can properly take judicial notice of under the

13  Rules of Evidence.  Instead, it appears that he is using this term when he just wants to tell or ask

14  the court something—when he wants to *notify* the court of some reason or desire.  **This is not a**

15  **proper use of a motion for judicial notice**, and Kane is cautioned not to utilize a motion for

16  judicial notice to tell the court things he wants it to know.[87]

17

18

19

_____

[86] Fed. R. Evid. 201(b)(1), (2); *accord U.S. v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994).

[87] In his second motion for judicial notice, ECF No. 13, Kane is asking the court to "proceed" with his action so he can "achieve the level Mr. Bacon is at" in his litigation.  Kane is advised that all cases proceed at different rates for different reasons, and he should not expect that his case will move at the speed or in the same course as any other person's case.  And again, filing a motion to ask the court to issue a decision on a pending motion only serves to further delay a case.  The court is aware of what motions it has pending; if it hasn't ruled on them, it's probably because the court has hundreds of other motions in hundreds of other cases.  Because of this court's significant caseload, rulings on motions often take many months.

## VII.    Opposition to the Court's order [ECF No. 8]

Kane filed a document that styled as a "Reply Memorandum in Opposition to the Courts Order."[88]   He filed this document before filing his complaint.   In it, Kane refers to previously requesting certification for a class action.[89]   This appears to be a reference to *Bacon*'s complaint that included a request for class certification.   As I have stated, Kane was not and is not a party to that action, and Bacon's complaint is not Kane's complaint.   Kane therefore had not made a request for class certification at the time of my order.   Furthermore, Kane appears to misinterpret my ruling as being a substantive ruling on the request Bacon made in his complaint for class certification.    In my ruling, I explicitly stated that I did not need to address Bacon's request for class certification at that time and merely noted that Bacon could not serve as an attorney on behalf of the class because he is not an attorney.[90]   In his opposition, Kane asks the court to grant class certification, and he made this request before he even filed a complaint.[91]   Kane subsequently filed a complaint, but I am dismissing all the claims in that complaint, so there are no claims that could provide the basis for a class certification at this time.   Therefore, it is unnecessary for me to rule on any request by Kane for class certification at this time and I will not do so.

### Conclusion

IT IS THEREFORE ORDERED that Kane's original complaint is the complaint filed on July 6, 2010 (ECF No. 10) and is the operative complaint.

IT IS FURTHER ORDERED that:

---

[88] ECF No. 8.

[89] *Id.* at 1.

[90] ECF No. 1 at 2 n.7.

[91] ECF No. 8 at 4.

22

- Kane's application to proceed in forma pauperis **[ECF No. 6] is GRANTED.**  Plaintiff need not pay an initial installment fee, prepay fees or costs or provide security for fees or costs, but he is still required to pay the full $350 filing fee under 28 U.S.C. § 1915, as amended.  This full filing fee will remain due and owing even if this case is dismissed or otherwise unsuccessful.  In order to ensure that plaintiff pays the full filing fee, IT IS FURTHER ORDERED that **the Nevada Department of Corrections must pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to the account of Shannon K Kane, # 46827-048, in the months that the account exceeds $10.00, until the full $350.00 filing fee has been paid for this action.  The Clerk is directed to SEND a copy** of this order to (1) the Finance Division of the Clerk's Office and (2) the Chief of Inmate Services for Core Civic, 2190 East Mesquite Ave., Pahrump, NV 89060.

IT IS FURTHER ORDERED that **all of the *Bivens* claims are dismissed with prejudice, as amendment would be futile.**

IT IS FURTHER ORDERED that **Kane has leave to file an amended complaint alleging a non-*Bivens* Eighth Amendment claim for injunctive relief that is based on 28 U.S.C. § 1331 and the court's inherent equitable powers.**  If Kane chooses to file an amended complaint, he must write the words "First Amended Complaint" in the caption.  The amended complaint will be screened in a separate screening order.  **If Kane does not file an amended complaint by August 20, 2020, this action will be dismissed for failure to state a colorable claim.**

IT IS FURTHER ORDERED that Kane's pending motions **[ECF Nos. 4, 5, 9, 11, and 13] are DENIED.**

23

IT IS FURTHER ORDERED that I decline to rule on any request for class certification at this time.

Dated: July 20, 2020

_____
U.S. District Judge